UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

SECURITIES AND EXCHANGE
COMMISSION,

        Plaintiff,

v.                                    Case No. 22-cv-12326

MARK J. McKINLEY,
JUMPSTART EQUITY LLC, and
PAYSTR LLC,

                                             Jury Trial Demanded

        Defendants,
_____/

# COMPLAINT

Plaintiff Securities and Exchange Commission (the "SEC"), for its Complaint against Mark J. McKinley, JumpStart Equity LLC ("JumpStart"), and Paystr LLC ("Paystr") (collectively, "Defendants"), alleges as follows:

## SUMMARY OF ACTION

1. This case involves the unregistered offer and sale of securities in violation of Sections 5(a) and 5(c) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77e(a), 77e(c)].

2. From at least August 2019 through May 2021, Defendants offered and sold securities in one company, JumpStart, in order to obtain funding for a related company, Paystr, to provide consulting services to start-up companies. Both

JumpStart and Paystr were founded and controlled by McKinley. The Defendants did not register with the SEC these public offers and sales of JumpStart securities, as required by federal securities law, and no exemption or safe harbor from this requirement applied.

3. In total, Defendants illegally raised approximately $890,000 from 37 investors in four states from the sale of JumpStart securities. In exchange for providing investor funds to Paystr, JumpStart was to receive $200,000 of equity in each Paystr start-up company (subject to certain limitations), from which JumpStart (and thus its investors) could potentially profit by liquidating those interests if and when the start-up companies received additional capital funding or went public. To date, JumpStart investors have not received any profits, interest or return of principal on their investments.

4. Because Defendants never filed a registration statement for the offer and sale of JumpStart securities, they never provided investors with essential information that issuers are required to include in such statements when soliciting public investments.

5. Paystr is the managing member of JumpStart and received a significant portion of the proceeds from the unregistered offering of JumpStart securities.

6. McKinley, the sole decision-maker of JumpStart and Paystr, was a necessary and substantial participant in these entities' securities law violations, and he personally committed these violations.

7. Accordingly, the SEC seeks a judgment from the Court permanently enjoining Defendants from engaging in the acts, practices, and courses of business set forth in this Complaint and awarding civil penalties, among other remedies.

## JURISDICTION AND VENUE

8. The SEC brings this action pursuant to Sections 20(b) and 20(d) of the Securities Act [15 U.S.C. §§ 77t(b) and 77t(d)].

9. This Court has jurisdiction over this action pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Section 21(d)(5) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78u(d)(5)].

10. Defendants, directly or indirectly, have made use of the means or instruments of transportation or communication in interstate commerce or of the mails in connection with the transactions, acts, practices and courses of business alleged herein.

11. Venue in this District is proper under Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)]. JumpStart and Paystr have offices in this District, McKinley resides in this District, all Defendants have transacted business in this

3

District, and Defendants sold or orchestrated sales of JumpStart securities to purchasers residing in this District.

## DEFENDANTS

12. **Mark J. McKinley**, age 64, is a resident of Kawkawlin, Michigan. He is the founder and CEO of JumpStart and the founder and managing member of Paystr, which in turn is the managing member of JumpStart.

13. **JumpStart Equity LLC** is a Michigan limited liability company with its principal place of business in Bay City, Michigan. It purports to provide consulting and other services to start-up companies to improve their finances and operations for future capital raises through private placements or public offerings.

14. **Paystr LLC** is a Michigan limited liability company with its principal place of business in Bay City, Michigan. It purports to provide digital marketing and other consulting services to start-up and other companies.

## FACTS

15. Sections 5(a) and 5(c) of the Securities Act require persons who offer and sell securities to the public to register those offers and sales with the SEC, absent certain exemptions or safe harbors that do not apply to Defendants' transactions. Registration statements relating to an offering of securities provide public investors with material information about the issuer and the offering, including financial and managerial information, how the issuer will use offering

proceeds, and the risks and trends that affect the enterprise and an investment in its securities.

16. The definition of a "security" under the Securities Act includes, among other instruments and investment vehicles, "investment contracts." Investment contracts are instruments through which a person invests money in a common enterprise and reasonably expects profits or returns derived from the entrepreneurial or managerial efforts of others.

17. In 2013, McKinley founded Paystr, which is the managing member of JumpStart. McKinley wholly controls the operations and accounts of both entities.

18. At all relevant times, Paystr purported to provide various consulting services to start-up companies ("Targets") with the goal of preparing the Targets for first or second rounds of investor financing, either through private placements or public offerings.

19. In 2019, McKinley and Paystr formed JumpStart to serve as an investment vehicle through which Paystr would receive money to conduct its consulting services business. JumpStart has no independent operations or assets.

20. From at least August 2019 through May 2021, the Defendants offered and sold Class A Preference Membership Units ("Units") in JumpStart in a continuous offering, during which they raised approximately $890,000 from 37 investors in four states.

21. McKinley contacted friends and family about investing in JumpStart. If the potential investor expressed interest, McKinley met with them for a more in-depth discussion about the JumpStart offering.

22. McKinley provided potential investors with marketing documents about JumpStart and Paystr, as well as JumpStart offering documents, including a subscription agreement and private placement memorandum ("PPM") in person and through the mail. McKinley created, or directed the creation of, and approved the content of these documents.

23. Defendants also encouraged JumpStart investors to tell their friends, family, and others about the benefits of investing in JumpStart and to encourage them to invest. These other potential investors did not have a pre-existing relationship with Defendants. Paystr employees, at McKinley's direction, solicited these potential investors by calling or emailing them, and providing them with the JumpStart marketing and offering documents. The Paystr employees also put them in contact with McKinley and processed the investors' documents and investment payments.

24. After Paystr employees made the initial contact, McKinley often met with the potential investors, including flying to California at least once in 2021 to talk to several eventual investors, and also provided them with the JumpStart

marketing and offering documents. At least 30 investors invested in JumpStart in this way.

25.    The solicitation efforts by Defendants constituted a general solicitation.

26.    McKinley, in person and in the JumpStart offering documents, told investors that: (i) they would receive an ownership interest in JumpStart in the form of Units; (ii) their money would be pooled with that of other JumpStart investors; (iii) profits would be distributed pro-rata; and (iv) the investors would not have any role in the operation of the company. The JumpStart PPM also stated investors would earn 8% annual simple interest on their investment principal.

27.    According to offering documents and McKinley's statements to investors, JumpStart was to provide the investor funds to Paystr and, in exchange, JumpStart, and thus its investors, would receive $200,000 worth of equity in each Target for whom Paystr provided consulting services (such equity interests not to exceed the total amount of money JumpStart provided to Paystr). Further, JumpStart could sell the equity once the Target received additional rounds of funding or went public. The PPM stated that "Paystr's JumpStart deliverable is to secure Round 1 Funding for 10 Targets . . . ." This statement was followed by a "Use of Proceeds" section that stated, "The commercial seeding of 10 Targets at $200,000 each."

7

28. The JumpStart subscription agreement called for investors to check off boxes to affirm that they were accredited or otherwise sophisticated investors. JumpStart did not require the investors to provide any documentation to support their answers.

29. At least 18 investors affirmed in the subscription agreements that they were accredited, but Defendants took no other steps to determine or confirm their accreditation status and relied solely on the investors' representations.

30. At least 18 other JumpStart investors did not complete this part of the subscription agreement but the Defendants permitted them to invest.

31. At least 12 investors were not accredited. Further, several of the unaccredited investors were not sophisticated investors and had no investment experience, including in private offerings.

32. Defendants did not provide any JumpStart financial statements to any of the potential investors, regardless of their accreditation status.

33. In April 2021, McKinley and JumpStart sent a letter to the existing JumpStart investors accompanied by an amended subscription agreement, PPM, and "Investor's Acknowledgment and Consent." The letter stated, among other things, that the amended PPM addressed "…important items that we previously disclosed orally and that we believe should be reiterated in writing." The Amended PPM stated that its effective date was July 23, 2019, which was prior to the first

investment. It also stated that all JumpStart funds would be transferred to Paystr and that Paystr had "*carte blanche* authority with regard to spending the net proceeds from the offering. . . ." (italics in original). Similarly, the new "Use of Proceeds" section stated that Paystr could reallocate funds from JumpStart at its sole discretion. Nearly all JumpStart investors (34 of 37) signed these documents, and an existing investor purchased the investments of the three investors who refused to sign the amended documents.

34. Investor funds were in fact pooled. All of the money that investors invested in JumpStart has been spent, and the investors have not received any interest or return of principal on their investments.

35. Paystr performed work assisting several Targets prepare for secondary capital raises but to date no such capital raises have occurred.

36. The JumpStart investors did not exercise any control or authority over the operations of JumpStart. McKinley exercised ultimate control and authority over the operations of JumpStart (and Paystr), and investors relied on his managerial skills to provide a return on their investments.

37. Defendants used interstate commerce when they offered and sold investment Units in Jumpstart in multiple states by, among other things, corresponding with potential investors via mail, emails and telephone calls and receiving investor funds via interstate wire transfers.

38. The investments in Jumpstart offered and sold by Defendants were investment contracts and thus were securities.

39. No registration statement was ever filed with the SEC or has ever been in effect with respect to any offers and sales of the securities in JumpStart.

## CLAIM FOR RELIEF

**Violations of Sections 5(a) and 5(c) of the Securities Act**
**[15 U.S.C. §§ 77e(a) and 77e(c)]**
**(All Defendants)**

40. The SEC realleges and reincorporates by reference the allegations set forth in paragraphs 1 through 39 above as though fully set forth herein.

41. By engaging in the conduct described above, Defendants: (a) without a registration statement in effect, directly and indirectly, made use of the means and instruments of transportation or communications in interstate commerce or of the mails to sell securities through the use or medium of a prospectus or otherwise, and (b) without a registration statement in effect, directly and indirectly, made use of the means and instruments of transportation or communication in interstate commerce or of the mails to offer to sell through the use or medium of a prospectus or otherwise, securities as to which no registration statement had been filed; all in violation of Securities Act Sections 5(a) and 5(c) [15 U.S.C. §§ 77e(a) and 77e(c)].

42. By reason of the conduct described above, Defendants, directly or indirectly, violated, and, unless enjoined, will likely again violate, Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and 77e(c)].

## RELIEF REQUESTED

WHEREFORE, the SEC respectfully requests that the Court Enter a Final Judgment:

A. Permanently enjoining Defendants, and each of their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from violating, directly or indirectly, Section 5 of the Securities Act [15 U.S.C. § 77e];

B. Pursuant to Section 21(d)(5) of the Exchange Act [15 U.S.C. § 78u(d)(5)], permanently enjoining Defendants from, directly or indirectly, including, but not limited to, through any entity owned or controlled by the Defendants, participating in the issuance, purchase, offer, or sale of any security in an unregistered offering by an issuer.

C. Ordering that, as provided in Federal Rule of Civil Procedure 65(d)(2), the injunctions entered against each Defendant also bind the following who receive actual notice of the injunctions by personal service or otherwise: (a) the Defendant's officers, agents, servants, employees, and attorneys; and (b) other

persons in active concert or participation with the Defendant or with anyone described in (a);

D.  Ordering Defendant(s) to pay civil money penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)]; and

E.  Granting any other and further relief this Court may deem just and appropriate for the benefit of investors.

## JURY DEMAND

The SEC requests that this case be tried before a jury.

Dated:  September 30, 2022            Respectfully submitted,

**Securities and Exchange Commission**

s/   Michael D. Foster
Michael D. Foster (IL Bar # 6257063)
John E. Birkenheier (IL Bar # 6270993)
James O'Keefe (IL Bar # 6293490)
U.S. Securities and Exchange Commission
175 West Jackson Boulevard, Suite 1450
Chicago, IL 60604
Telephone: (312) 353-7390
Facsimile:  (312) 353-7398
Email: fostermi@sec.gov
Email: birkenheierj@sec.gov
Email: okeefej@sec.gov

Susan K. DeClercq (P60545)
Assistant United States Attorney
U.S. Attorney's Office, Eastern District of Michigan
211 W. Fort Street, Suite 2001

        Detroit, MI 48226
        313-226-9149
        Email: Susan.DeClercq@usdoj.gov

*Attorneys for Plaintiff*